UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-90-RLV
(5:11-cr-11-RLV-DSC-1)

| ADAM JOE LOUIS JORDAN, III, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | ORDER |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 5), and on Petitioner's Motion for an Order to Compel Counsel for Respondent to File an Answer or Responsive Pleading to 2255 Motion, (Doc. No. 6).

   **I. BACKGROUND**

1. Petitioner commits a series of armed robberies, along with several other individuals, at businesses located in North Carolina.

On October 19, 2009, Petitioner and his partner, Stephon Heller, entered a Family Dollar store in Statesville, North Carolina. (Criminal Case No. 5:11-cr-11, Doc. No. 74 at 8: PSR). Armed with handguns, Petitioner and Heller held an employee at gunpoint, while demanding money from the cash registers and safe. (Id. at 8). Throughout the encounter, Petitioner and Heller shouted threats at the employee, stating that they would "shoot" him if he did not comply.

1

(Id.).  As Petitioner and Heller were leaving the store, one of the men struck the employee in the head with the gun.  (Id.).  In total, the men stole nearly $3,000 during the robbery.  (Id.).

On November 10, 2009, Petitioner attempted to rob a Subway fast food restaurant in Statesville.  (Id.).  Petitioner entered the restaurant armed with a handgun.  (Id.).  When one of the customers said something about calling the police, Petitioner struck the customer in the face and fled.  (Id.).  Petitioner joined two other individuals, Frances Shuart and David Weaver, who had driven him to the scene and were waiting for him after the attempted robbery.  (Id.).  Later that month, on November 24, 2009, Petitioner robbed the Sleep Inn in Statesville.  (Id. at 9).  Petitioner threatened two of the employees with a gun, demanding money from the cash register and stealing the employees' purses.  (Id.).  When one of the employees resisted, Petitioner threatened her, stating, "It's not smart to get smart with me because I can just shoot you."  (Id.).  In total, Petitioner stole $345 from the cash register and $64 from the two employees.  (Id.).  Weaver and Shuart, who previously worked at the Sleep Inn before being fired, drove Petitioner to the hotel and waited for him afterward.  (Id.).  One week later, on December 1, 2009, Petitioner and another individual, Derrick Wallace, robbed the Yogi Foods store in Statesville.  (Id.).  Armed with a gun, Petitioner and Wallace stole over $1,000 and a carton of cigarettes.  (Id.).  As in several of the prior robberies, Weaver and Shuart drove Petitioner and his partner to and from the robbery.  (Id.).

Shortly thereafter, on December 8, 2009, Petitioner robbed a Quizno's restaurant in Statesville.  (Id. at 10).  Petitioner pointed a gun at the two employees and demanded money from the cash register.  (Id.).  Petitioner then ordered the employees to the back of the restaurant and demanded that they open the safe.  (Id.).  When the employees responded that they could not

2

open the safe, Petitioner demanded their wallet and purse. (Id.). After threatening to kill the employees if they attempted to leave, Petitioner turned his back for a moment, at which point the employees fled out the back door. (Id.). Petitioner attempted to pursue the employees, who held the door closed so that Petitioner could not get out. (Id.). Petitioner ultimately fled, having stolen just over $150. (Id.). Once again, Weaver and Shuart drove the getaway car. (Id.).

Finally, on January 12, 2010, Petitioner entered a McDonald's fast food restaurant in Hickory, North Carolina, armed with a pistol. (Id. at 6). After entering the McDonald's, Petitioner brandished the gun and ordered all of the employees and customers to the back of the restaurant. (Id.). Petitioner grabbed the money from the cash registers and demanded that the manager open the safe, threatening to kill someone if she did not comply. (Id.). The manager opened the outer safe but was unable to unlock the inner safe because it was on a time lock. (Id.). Petitioner then stole cash and a cell phone from one of the customers before fleeing. (Id.). This time officers encountered Petitioner after the robbery parked in a car a quarter mile from the McDonald's. (Id.). Petitioner was joined in the car by Shuart and Weaver. (Id.). After receiving consent to search the vehicle, officers found a loaded pistol, money bag, cell phone, and various articles of clothing. (Id.). Officers confirmed that the cell phone matched the phone Petitioner stole from the customer at the McDonald's. (Id.). Through subsequent investigation and interviews with his coconspirators, officers connected Petitioner to the prior armed robberies. (Id. at 7).

    2. Petitioner pleads guilty and, because Petitioner's first lawyer erred in his prediction regarding the guidelines calculation, this Court appoints a second lawyer to ensure that Petitioner's plea is knowing and voluntary.

On February 15, 2011, the grand jury for the Western District of North Carolina charged Petitioner with one count of conspiracy to obstruct, delay, and affect commerce by robbing a business engaged in interstate commerce through the use of actual and threatened force, violence, and fear of injury, in violation of the Hobbs Act, 18 U.S.C. § 1951; six substantive Hobbs Act robbery counts and aiding and abetting the same, corresponding to the six robberies, in violation of 18 U.S.C. §§ 1951(b)(3) and 2; five counts of using and carrying a firearm in furtherance of a crime of violence and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Id., Doc. No. 1 at 2-8: Indictment). Weaver, Shuart, and Heller were also charged in the conspiracy count, as well as in several of the substantive Hobbs Act robbery and § 924(c) counts. (Id. at 2-7). This Court appointed Attorney Kevin Tate to represent Petitioner.

Petitioner entered into a plea agreement in which he agreed to plead guilty to the Hobbs Act conspiracy count, one count of using and carrying a firearm during a crime of violence, and the felon-in-possession-of-a-firearm count. (Id., Doc. No. 54 at 1: Amended Plea Agreement). In exchange, the Government agreed to dismiss the remaining counts, including the four remaining § 924(c) counts. (Id. at 1). With respect to the guidelines, the parties agreed that Petitioner would be entitled to a two-level reduction if he clearly demonstrated acceptance of responsibility, that his plea was timely, and that neither party would seek a departure or variance from the applicable guidelines range. (Id. at 2). Petitioner acknowledged, however, that "any estimate of the likely sentence [was] a prediction rather than a promise" and that this Court is "not bound by recommendations or agreements" between the parties and "has the final discretion

4

to impose any sentence up to the statutory maximum." (Id.). In exchange for the Government's concessions, Petitioner waived the right to appeal or collaterally attack his conviction or sentence, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 5).

Consistent with his plea agreement, Petitioner pled guilty in a hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, United States Magistrate Judge David S. Cayer presiding. (Id., Doc. No. 100 at 2-14: R. 11 Hrg. Tr.). After placing Petitioner under oath, the magistrate judge confirmed that Petitioner understood the charges to which he was pleading guilty, as well as the applicable statutory penalties. (Id. at 3-5). Following a recitation of the charges, Petitioner admitted that he was, "in fact," guilty of the three counts. (Id. at 8). After the government summarized the terms of the plea agreement, Petitioner also acknowledged that he understood the terms of his agreement and agreed with them. (Id. at 9-11). With respect to the guidelines, Petitioner answered in the affirmative when the magistrate judge asked whether his attorney discussed how the sentencing guidelines may apply to his case. (Id. at 6-7). Petitioner also acknowledged that he would be bound by his plea even "if the sentence [were] more severe than [he] expected." (Id. at 7). At the conclusion of the hearing, the magistrate judge found Petitioner's plea to be knowingly and voluntarily made and accepted it. (Id. at 14).

In preparation for sentencing, the probation officer prepared a presentence investigation report. (Id., Doc. No. 74 at 25). Citing U.S.S.G. § 1B1.2(d), the probation officer calculated the guidelines for Petitioner's Hobbs Act conspiracy conviction as if he had "been convicted on a separate count of conspiracy for each offense that [he] conspired to commit." (Id. at 11). Specifically, the probation officer calculated an adjusted offense level for the six robberies that

comprised the conspiracy charge, beginning with a base offense level of 20 for each robbery and then adding five or six levels for the brandishing or use of a firearm and two levels for the robberies during which one of the victims sustained bodily injury. (Id. at 11-14). In calculating the offense level for the robbery associated with Petitioner's conviction for using and carrying a firearm during and in relation to a crime of violence, the probation officer omitted the firearm enhancement. (Id. at 14). In addition to the six robbery offenses, the probation officer calculated an offense level for the felon-in-possession-of-a-firearm count. (Id.).

The probation officer then applied the multiple-count adjustment provisions in guidelines U.S.S.G. § 3D1.3, treating each robbery as a group, calculating the corresponding units for each group, and then adding five levels to the robbery with the highest adjusted offense level, resulting in a combined adjusted offense level of 33. (Id. at 15). After reducing three levels for acceptance of responsibility, the probation officer calculated a total offense level of 30, which, when coupled with Petitioner's criminal history category of IV, resulted in a guidelines range of 135 to 168 months, followed by a mandatory, seven-year consecutive term of imprisonment for the § 924(c) conviction. (Id. at 14; 25).

On September 10, 2012, this Court held a sentencing hearing. (Id., Doc. No. 101: Sent'g Hrg. I Tr.). At the outset of the hearing, Petitioner complained that he was not satisfied with Attorney Tate's representation. (Id. at 2-3). Among Petitioner's complaints was the fact that both he and defense counsel were "stunned" by the multiple-count adjustment that increased his offense level by five levels. (Id. at 5-6). In response, Attorney Tate acknowledged that he had not anticipated that, by pleading guilty to the Hobbs Act conspiracy charge, Petitioner would face the multiple-count adjustment based on each of the individual robberies. (Id. at 6-10).

6

Based on his assessment of the strength of the evidence, however, Attorney Tate explained that, despite the five-level multiple-count adjustment, the plea agreement still provided Petitioner a substantial benefit because it resulted in the dismissal of multiple § 924(c) counts, which carried the potential for a mandatory, consecutive sentence of more than 100 years. (Id.). Assistant United States Attorney ("AUSA") Dana Washington added that Petitioner "received the best possible plea offer that he was going to get in this case," that "[w]ithdrawing his plea would mean going to trial," and that "[defense] counsel [had] correctly stated the enormous sentence he would be facing." (Id. at 10). Despite Petitioner's expressed intention to proceed with the sentencing hearing, this Court, "in the interest of fairness," suspended the proceeding and ordered that another attorney be appointed to ensure that Petitioner's plea was knowing and voluntary and to "make sure that when [he was] sentenced, [he] had an attorney who [had] familiarized himself with the facts of the case." (Id. at 11).

Before Petitioner's second sentencing hearing, this Court appointed Attorney Randy Lee as substitute counsel for Petitioner. At the outset of the second sentencing, conducted on March 4, 2013, Attorney Lee explained that he had reviewed the plea agreement with Petitioner and that he had explained the law regarding withdrawing a guilty plea. (Id., Doc. No. 121 at 4-5: Sent'g Hrg. II Tr.). After hearing from Attorney Lee, this Court engaged in a colloquy with Petitioner to determine how he wished to proceed. (Id. at 5-6). Petitioner thanked the Court for appointing new counsel and stated that he was "very comfortable" with Attorney Lee's representation. (Id. at 5). Petitioner persisted in his complaint, however, about the application of the "multi-count adjustments," contending that they should not apply. (Id. at 5-8). Petitioner clarified that he was "not asking the Court to allow [him] to withdraw [his] guilty plea" but instead sought to be

7

sentenced without the multiple-count adjustment. (Id. at 9-11).

In response, AUSA Washington explained that the multiple-count adjustment properly applied under the guidelines and that Petitioner's "choice" was to either move to withdraw his plea or continue under the current plea agreement. (Id. at 12). According to Washington, Petitioner "got a very fair deal from [his] plea agreement," which included the dismissal of multiple § 924(c) counts that carried lengthy, mandatory, consecutive terms of imprisonment. (Id.). After hearing from both sides, this Court found that, by his own admission, Attorney Tate "did not properly advise [Petitioner] with respect to the handling of the multiple count adjustment." (Id. at 13). This Court continued that Petitioner was at a "fork in the road" where he had two choices: (1) he could move to withdraw his plea and proceed to trial or plead straight up to all counts, or (2) he could go forward with his current plea "now that [he] underst[ood] the effects of that [plea]." (Id. at 14-16). In response, Petitioner stated that he "believe[d]" he understood his position, and, following a break to allow him to confer with Attorney Lee, he stated that he wished to proceed with sentencing. (Id. at 16).

Despite his informed decision to proceed under his current plea, Petitioner stated that he wished to reserve his rights to "come back with a 2255" related to his plea agreement. (Id. at 18). In response, this Court explained that, in its view, Petitioner's decision to proceed with sentencing "carrie[d] with it the notion that . . . [he] underst[ood]" the charges and process for sentencing. (Id. at 18-19). In response, Petitioner stated that, although he did not wish to withdraw his plea, he hoped that Attorney Lee and the government would negotiate a more favorable agreement. (Id. at 19-20). AUSA Washington explained that no more favorable deal was forthcoming, and Attorney Lee confirmed his understanding that the Government was "not

8

going to give us a better offer." (Id. at 21). Having heard the Government and defense counsel's response, Petitioner reconfirmed that he would "like to proceed with sentencing" under his initial plea. (Id.).

After resolving the issue of the plea agreement, this Court continued with the sentencing hearing, confirming that Petitioner understood the charges and penalties, that he was satisfied with the services of counsel, and that he was pleading guilty freely and voluntarily. (Id. at 22-23). Petitioner then admitted that he committed the offenses to which he was pleading guilty, and the parties stipulated to the factual basis set forth in the presentence report. (Id. at 23). In light of Petitioner's representations and the parties' stipulation, this Court reaffirmed its acceptance of Petitioner's plea and entered a verdict of guilty. (Id. at 23-24). Petitioner then confirmed that he had reviewed the presentence report "in detail" with Attorney Lee. (Id. at 24). Attorney Lee objected to the application of the multiple-count adjustment based on the individual robbery offenses. (Id. at 24-25).

In response, AUSA Washington explained that the multiple-count adjustment properly applied under U.S.S.G. § 1B1.2(d), which governed situations like this one where a defendant is convicted of a conspiracy to commit more than one offense. (Id. at 26-27). The Government also presented testimony from two of the officers involved in the investigation to establish the factual basis for two of the contested robberies. (Id. at 29-35). After hearing from both sides and receiving the Government's evidence, this Court overruled the objections and adopted the advisory guidelines range of 135 to 168 months in prison, followed by the seven-year mandatory, consecutive term for the § 924(c) conviction. (Id. at 36). Attorney Lee argued for a sentence at the low end of the applicable range, while AUSA Washington recommended a

9

sentence at the high end. (Id. at 37; 39-41). This Court then sentenced Petitioner at the high end of the guidelines to 168 months in prison, followed by seven years consecutive, for a total of 252 months in prison.[1] (Id. at 47-48).

This Court entered judgment on March 8, 2013, and Petitioner filed a timely notice of appeal. (Id., Doc. No. 111: Judgment; Doc. No. 113: Notice of Appeal). Attorney Lee submitted a brief on behalf of Petitioner pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious issues for appeal but questioning whether Petitioner was deprived of the effective assistance of counsel based on Attorney Tate's incorrect guidelines prediction. On November 20, 2013, the United States Court of Appeals for the Fourth Circuit affirmed in an unpublished opinion, holding that the record did not conclusively establish that Petitioner received ineffective assistance. United States v. Jordan, 546 F. App'x 243 (4th Cir. 2013) (unpublished).

Petitioner timely filed the instant motion to vacate by placing a copy in the prison mailing system on June 3, 2014. In his motion, Petitioner alleges three ineffective assistance of counsel claims: (1) that Attorneys Tate and Lee were ineffective for failing to challenge the guidelines calculation; (2) that Attorneys Tate and Lee were ineffective for failing to challenge the sufficiency of the evidence as to one of the Hobbs Act robbery counts; and (3) that Attorney Tate was ineffective for failing to advise Petitioner about the application of the multiple-count adjustment, rendering his guilty plea unknowing and involuntary. On June 24, 2014, this Court entered an Order for the Government to respond and, after receiving an extension of time, the

---

[1] The Court notes that, although the Court stated in open court at the sentencing hearing that the Court was sentencing Petitioner to 168 months in prison as to Counts 1 and 13, the judgment itself states that the sentence on Counts 1 and 13 was 151 months in prison. The length of imprisonment stated in the judgment appears to be a typographical error.

10

Government filed its Response on October 17, 2014.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the

petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When analyzing an ineffective assistance of counsel claim in the context of a guilty plea, due regard must be given to a defendant's "[s]olemn declarations in open court." See Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005) (affirming the district court's decision not to hold an evidentiary hearing because all of defendant's claims were contradicted by statements made during the plea colloquy and the terms of the plea agreement). Specifically, any statement made by a defendant must be presumed to be true and is strong evidence that suggests the voluntariness of a plea. See United States v. Millner, 329 F. App'x 396, 398 (4th Cir. 2009) (unpublished); United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991). Thus, there is a strong presumption that the plea is final and binding. United States v. Belk, 479 F. App'x 531, 532 (4th Cir. 2012) (unpublished).

1. Petitioner's claim that Attorneys Tate and Lee were ineffective for failing to challenge the guidelines calculation.

Petitioner first claims that his two attorneys were ineffective for failing to challenge the calculation of his guidelines, including the application of U.S.S.G. § 1B1.2 and what Petitioner alleges was double counting related to the firearm enhancements. As an initial matter, Petitioner's claim fails because Attorney Lee, in fact, did object to the guidelines calculation, an objection that this Court overruled after hearing argument and receiving evidence. Regardless, Petitioner's claim of ineffective assistance fails because this Court correctly calculated the guidelines in this case. Section 1B1.2(d) provides that "[a] conviction on a count charging a

12

conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." In fact, the commentary to the guidelines addresses the exact scenario presented here, explaining that "where a conviction on a single count of conspiracy establishes that the defendant conspired to commit three robberies, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery." U.S.S.G. § 1B1.2 app. n.3. Consistent with § 1B1.2(d) and the commentary, this Court calculated Petitioner's offense level as if he had been convicted for conspiracy to commit each of the robberies that occurred during the time frame of the Hobbs Act conspiracy count to which he pled guilty, and then correctly applied the multiple-count adjustment rules based on that calculation. Moreover, contrary to Petitioner's assertion, there was no double counting because, in calculating the adjusted offense level for the offense associated with Petitioner's § 924(c) conviction, this Court omitted the firearm enhancement. Accordingly, Petitioner is unable to establish that any challenge to the guidelines calculation would have had any merit, and his claim therefore fails.

2. Petitioner's claim that defense counsel were ineffective for failing to challenge the sufficiency of the evidence as to one of the robberies.

In his next claim, Petitioner contends, without support, that Attorneys Tate and Lee were ineffective for failing to challenge the sufficiency of the evidence as to one of the robberies. Not only is Petitioner's allegation unsupported, but he also fails to allege which element he contends the government failed to satisfy, stating only that he "maintains that the [e]vidence is insufficient

13

to support the elements required to prove a HOBBS ACT violation." (Doc. No. 1 at 5). Petitioner's conclusory allegation is insufficient to support his claim, where he bears the burden of demonstrating ineffective assistance. Moreover, Petitioner's self-serving allegation is contradicted by his sworn statements at the Rule 11 hearing and at the sentencing hearing, where he admitted that he was, in fact, guilty and stipulated to the factual basis set forth in the presentence report. Petitioner has not provided any basis for questioning the validity of his sworn statements. For these reasons, Petitioner's second claim fails.

3. Petitioner's contention that defense counsel Tate's incorrect prediction of the guidelines range rendered his guilty plea involuntary.

In his last claim, Petitioner contends that Attorney Tate's failure to anticipate the effect of the multiple-count adjustment rendered his guilty plea unknowing and involuntary. Any impact of Attorney Tate's incorrect prediction was effectively mitigated, however, by this Court's appointment of substitute counsel to review the plea agreement with Petitioner to ensure that his actions were, in fact, knowing and voluntary. A review of the record confirms that, after reviewing the issue with Attorney Lee and discussing the issue with this Court in a second sentencing hearing, Petitioner made the informed decision to proceed with his guilty plea pursuant to his existing plea agreement with the Government. On this record, Petitioner is unable to establish that any bad advice from Attorney Tate rendered his plea unknowing and involuntary.

As the Government notes, in addition to the fact that Petitioner's claim is without merit, the claim is also barred. In his Anders brief, Petitioner raised the same claim he now presents in his motion to vacate, contending that his guilty plea was not knowing and voluntary in light of

Attorney Tate's incorrect guidelines prediction. It is well established that a petitioner may not seek to re-litigate issues in a motion to vacate that have been decided on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) (holding that issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion). In its opinion affirming Petitioner's conviction, the Fourth Circuit rejected Petitioner's claim, concluding that he failed to establish a claim of ineffective assistance based on the record on appeal. United States v. Jordan, 546 F. App'x at 244. Petitioner has not offered anything to supplement the record in his § 2255 motion, relying exclusively on the record made before this Court during the criminal case. Because Petitioner has not presented any new argument or evidence in support of his claim in his post-conviction motion, the claim is barred by the re-litigation doctrine and is foreclosed by the Fourth Circuit's opinion on direct appeal.

Finally, even if Petitioner's claim were not meritless and barred, he is nevertheless unable to establish prejudice. As both the Government and defense counsel recognized during the sentencing hearings, if Petitioner had withdrawn from his plea agreement, no more favorable deal was forthcoming and his sentence would have likely been much higher in light of the mandatory, consecutive terms that accompanied convictions for the four § 924(c) counts dismissed as part of the agreement. Because Petitioner is unable to show that his sentence would have been more lenient but for counsel's ineffectiveness, he is unable to establish prejudice, and his claim therefore fails for this alternative reason as well.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Petitioner's Motion for an Order to Compel Counsel for Respondent to File an Answer or Responsive Pleading to 2255 Motion, (Doc. No. 6), is **DENIED** as moot.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: October 30, 2014

Richard L. Voorhees
United States District Judge